420 A.2d 688

**Robert P. DULL, Appellant,**

v.

**EMPLOYERS MUTUAL CASUALTY COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed June 6, 1980.

570

Robert B. Smith, Pittsburgh, for appellant.

Steven H. Wyckoff, Pittsburgh, for appellee.

Before SPAETH, HOFFMAN, and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in concluding that he was not a "victim" as defined by the Pennsylvania No–fault Motor Vehicle Insurance Act[1] and thus not entitled to basic loss benefits from appellee, his automobile insurance carrier. We disagree and, accordingly, affirm the order of the court below.

On September 26, 1975, appellant drove his automobile, with a boat attached to the roof, to Keystone Lake in Armstrong County, Pennsylvania. Upon arriving at the lake, appellant parked his car, got out, and began to remove the boat from the car roof. As he was standing behind the car unloading the boat, appellant fell because of the condition of the land and sustained injuries. Appellant instituted this action to recover basic loss benefits pursuant to an insurance policy issued by appellee. Appellee's defense was

1. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq., 40 P.S. § 1009.101 et seq. (hereinafter cited as No–fault Act).

that appellant was not entitled to basic loss benefits because he was not a victim as defined in the No–fault Act. Because the facts were undisputed, both parties filed motions for summary judgment. The lower court granted appellee's motion, and appellant took this appeal.

Section 201 of the No–fault Act, 40 P.S. § 1009.201, provides in part: "If the accident resulting in injury occurs in this Commonwealth, any victim . . . is entitled to receive basic loss benefits in accordance with the provisions of this act." The No–fault Act defines "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle . . . ." 40 P.S. § 1009.103. The No–fault Act further states:

> "Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include:
>
> .    .    .    .    .
>
> . . . conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it.

*Id.*

Appellant argues that he was a "victim" under the No–fault Act because his conduct in unloading the boat occurred while he either was "occupying" or "alighting from" his vehicle. In construing the statutory definition of "victim," we begin by ascertaining the intent of the legislature. The purpose of the No–fault Act is "to establish at reasonable cost . . . a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims . . . ." 40 P.S. § 1009.102(b). *See DuBose v. McCoy*, 275 Pa.Super. 246, 419 A.2d 705 (1980); *Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978); *Singer v. Sheppard*, 33 Pa.Cmwlth. 276, 381 A.2d 1007 (1978). The Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., which provides that "[w]ords and phrases shall be construed . . . according to

their common and approved usage," *id.* § 1903, also provides that statutes such as the No-fault Act "shall be liberally construed to effect their objects and to promote justice." *Id.* § 1928(c). However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). In *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979), our Court stated: "Historically, the courts of this Commonwealth have . . . found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature . . ., we should err in favor of coverage for the insured." *Id.*, 265 Pa.Super at 187, 401 A.2d at 1162–63 (footnote omitted).

With these guidelines in mind, we now consider the meaning of the words "occupying" and "alighting from" as used in the No–fault Act's definition of "victim." The common meaning of the word "occupy" is "to fill up (a place or extent)" or "to hold possession of . . . ." Webster's Third New International Dictionary 1561 (unabridged 1967). The word "alight" means "to spring down, get down, or descend (as . . . from a vehicle) . . . ." *Id.* at 609. Because appellant was standing behind his automobile at the time he fell, he was not literally occupying it. Additionally, because appellant had already gotten out of his car, he was not in fact alighting from it when he fell. Consequently, if the words "occupying" and "alighting from" are construed according to their common meaning, appellant clearly does not come within the statutory definition of "victim."

Recognizing that he would not be entitled to basic loss benefits if the statutory language is read literally, appellant argues that the words "occupying" and "alighting from" should be broadly construed to encompass his conduct in this case. In support of his contention, appellant cites Pennsylvania trial court decisions and appellate court decisions in other jurisdictions which have broadly construed the words

"in or upon, entering or alighting from" as used in medical coverage provisions of pre–no–fault automobile insurance policies. *See, e. g., Wolf v. American Casualty Co.,* 2 Ill. App.2d 124, 118 N.E.2d 777 (1954); *Madden v. Farm Bureau Mutual Automobile Insurance Co.,* 82 Ohio App. 111, 79 N.E.2d 586 (1948); *Mattia v. Springfield Fire and Marine Insurance Co.,* 23 Beaver County 16 (Pa.C.P. 1961); *Young v. State Automobile Insurance Association,* 72 Pa.D. & C. 394 (Lycoming County 1949). *See also Government Employees Insurance Co. v. Keystone Insurance Co.,* 442 F.Supp. 1130 (E.D.Pa. 1977); Annot., 42 A.L.R.3d 501 (1972); Annot., 19 A.L.R.2d 513 (1951).[2]

We conclude that in this case the words "occupying" and "alighting from" should be construed according to their common meaning. As previously noted, the purpose of the No–fault Act is "to establish . . . a Statewide system of prompt and adequate basic loss benefits for *motor vehicle accident victims . . . .*" 40 P.S. § 1009.102(b) (emphasis added). The lower court correctly noted in its opinion that appellant was not involved in a motor vehicle accident. Consequently, the legislative purpose would not be furthered by extending liability under the No–fault Act to the facts of this case. We do not decide whether in all cases the words "occupying, entering into, or alighting from" as used in section 103 of the No–fault Act should be given their common meaning. We believe, however, that those words should be so construed where, as here, a broad construction will not promote the purpose of the No–fault Act. Accordingly, we agree with the lower court that appellant did not meet the statutory definition of "victim" and, therefore, is not entitled to basic loss benefits from his insurance carrier.

Order affirmed.

**2.** Some jurisdictions have liberally construed the word "occupying" or "occupant" as used in no–fault acts. *See, e. g. Hathcox v. Liberty Mutual Insurance Co.,* 90 Mich.App. 511, 282 N.W.2d 374 (1979); *McPherson v. Auto–Owners Insurance Co.,* 90 Mich.App. 215, 282 N.W.2d 289 (1979); *Newcomb Hospital v. Fountain,* 141 N.J.Super. 291, 357 A.2d 836 (Law Div. 1976).