447 A.2d 1037

**Patricia J. MONAGHAN**

v.

**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, Appellant,**

v.

**Ronald STANISLAWCZYK t/d/b/a Brookline Mobil.**

Superior Court of Pennsylvania.

Submitted May 20, 1981.

Filed July 9, 1982.

420

Steven B. Larchuk, Pittsburgh, for appellant.

Robert B. Truel, Pittsburgh, for Monaghan, appellee.

Linton L. Moyer, Pittsburgh, for Stanislawczyk, appellee.

Before MONTGOMERY, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

The facts of this case were stipulated to by the parties. Plaintiff-appellee took her motor vehicle to the Brookline Mobil Gas station to have it inspected and repaired. The owner of said facility was working on another vehicle while appellee waited nearby in the garage. While the other vehicle was being worked upon, it moved forward and struck appellee. She suffered personal injuries. On that date, appellee was the named insured on a personal auto policy written by appellant-insurer.[1]

Appellee filed a complaint in assumpsit, seeking payment of "Basic Loss Benefits" pursuant to her policy with appellant. The case was submitted to the court on the stipulation of facts and cross-motions for summary judgment. The court granted appellee's motion for summary judgment; denying appellant's motion. Damages were assessed at $17,-854.60. After post-trial motions were denied, judgment was entered. This appeal followed.

The sole issue on this appeal is whether a patron on the premises of a repair facility, who is injured as a result of the work performed upon another vehicle may recover basic loss benefits under her own policy issued under the No-Fault Act. 40 P.S. 1009.101 et seq.

Section 1009.201(a) reads:

Right to basic loss benefits; limitation on benefits

(a) Accident within this State.—If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act.

The definitional section of the Act, § 1009.103 provides:

"Victim" means an individual who suffers injury *arising out of the maintenance* or use of a motor vehicle: "de-

---

1. A copy of the policy and related documents were incorporated into the stipulation.

ceased victim" means a victim suffering death resulting from injury.

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle *does not include:*

(A) *conduct within the course of a business of repairing,* servicing, or otherwise maintaining motor vehicles *unless the conduct occurs off the business premises* : or

(B) conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it. (Emphasis supplied).

The trial court found that the maintenance exclusion did not pertain to a patron of a repair shop reasoning that the legislature intended to exclude only persons engaged in the business of repairing and maintaining automobiles. The court further reasoned that the Act's intention was not to distinguish between patrons present within a repair facility and those not so present. Appellant argues that the exclusion pertains to "any person" [2] injured while present at a repair facility.

The purpose of the No-fault Act is "to establish at reasonable cost ... a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims ...." 40 P.S. § 1009.102(b). See *DuBose v. McCoy,* 277 Pa.Super. 149, 419 A.2d 705 (1980); *Hayes v. Erie Insurance Exchange,* 261 Pa.Super. 171, 395 A.2d 1370 (1978); *Singer v. Sheppard,* 33 Pa.Cmwlth. 276, 381 A.2d 1007 (1978). The Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., which provides that "[w]ords and phrases shall be construed ... according to their common and approved usage," id. § 1903, also provides that statutes such as the No-fault Act "shall be liberally construed to effect their objects and to promote justice." Id.

---

2. The policy excluded from coverage "any person" injured in a repair facility. The trial court believed such language exceeded the exclusion permitted by the No-Fault Act.

§ 1928(c). However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Id. § 1921(b). In *Heffner v. Allstate Insurance Co.*, 265 Pa.Super. 181, 401 A.2d 1160 (1979), our Court stated: "Historically, the courts of this Commonwealth have ... found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature ..., we should err in favor of coverage for the insured." Id. 265 Pa.Super. at 187, 401 A.2d at 1162–63 (footnote omitted). *Dull v. Employers Mut. Cas. Co.*, 278 Pa. Superior Ct. 569, 71–72, 420 A.2d 688, (1980); relied on in *Crusco v. Insurance Co. of North America*, 292 Pa. Superior Ct. 293, 437 A.2d 52, 53, (1981).

█ The Act clearly distinguishes between injuries attributable to maintenance of vehicles, arising on the premises of a repair shop, from those occurring off the business premises. Those occurring off the premises are covered by No-fault; those occurring on the premises are not. We need not look beyond the wording of the Act on this point.

█ While the above distinction is clear on the face of the statute, we must still determine whether the maintenance exclusion pertains to non-employees of a repair business. The only Pennsylvania case that has addressed the provision in question is *Erie Ins. Exchange v. Fleagle*, 285 Pa. Superior Ct. 310, 427 A.2d 651 (1981).[3] There a panel of this court (Judge Price dissenting) found the repair exclusion inapplicable to the facts of that case. A mechanic while crossing his employer's parking lot, to retrieve a car in need of repair, was struck by another vehicle driven by a non-employee. The court reviewed *Dull*, supra, and held that the injuries did not arise out of conduct of maintaining or repairing; therefore the mechanic was entitled to basic loss benefits. In the current case it is admitted that the injury arose out of the maintenance of a vehicle. Whether a patron may recov-

---

**3.** Our research of other jurisdictions has failed to reveal any precedent concerning a patron's status under the maintenance exclusion.

er in such situation appears to be a novel issue. Nonetheless, we find the statute relatively straightforward on the point in controversy.

■ Section 1009.201(a) refers to "any victim" as being entitled to basic loss benefits if he or she comes within the meaning of the Act. Victim may be further defined by referring to subsection 103 as one who suffers an injury due to "the maintenance" of a motor vehicle. Maintenance is then defined as *excluding* conduct performed on the business premises of a repair facility. The logical and reasonable conclusion drawn from the above is: *any person* who suffers an injury due to the maintenance of a motor vehicle, who is hurt while present on the repair premises is not a victim entitled to basic loss benefits under the Act.

We find support for such a holding in *Crusco v. Insurance Co. of North America*, supra, and *Dull v. Employees Mut. Cas. Co.*, supra. In *Crusco* No-fault coverage was denied for a fatal explosion caused by the use of a refrigerator and stove in a motor home. Such use was held to be excluded from the phrase "used as a device of transportation." A similar holding resulted in *Dull*. There the insured was injured while standing behind his car and attempting to remove a boat from the car roof, when he slipped. He was found not to be entitled to basic loss benefits as he was not "occupying, entering or alighting from" the car.

While such cases may be extreme examples of situations where the No-fault Act was not intended to apply, they do represent the fact that No-fault was not intended to be a panacea for all injuries that could be traced to a motor vehicle no matter how far removed from the actual operation of such vehicle.[4] Such was the will of the legislature expressed more particularly in Section 1009.301(a)

4. An example of such is *Liberty Mutual Insurance Co. v. Allied Truck Equipment Co.*, 103 Mich.App. 33, 302 N.W.2d 588 (1981). A fire started as a result of repairs being made on a vehicle. A number of vehicles and the repair facility were destroyed. The Michigan Court

§ 1009.301 Tort liability

(a) *Partial* abolition.—Tort liability is abolished with respect to any injury that takes place in this State *in accordance with the provisions of this act* if such injury *arises out of the maintenance* or use of a motor vehicle, except that . . . . (Emphasis supplied)

Therefore we must disagree with the lower court's holding that appellee did meet the statutory definition of "victim"; appellee is not entitled to basic loss benefits from her insurance carrier.

Judgment is reversed with directions to enter a verdict in favor of appellant.

HOFFMAN, J., concurs in the result.

of Appeals held that the vehicle owners could not recover under the Michigan No-fault but they should proceed under a bailment statute.